AUSA: MARGERY FEINZIG

```
------------------------------------- x
UNITED STATES OF AMERICA              :   SEALED COMPLAINT
                                      :
      - v. -                          :   Violation of
                                      :   18 U.S.C. § 1343
JOEL REICH,                           :
                                      :   COUNTY OF OFFENSE: Orange
                     Defendant.       :
                                      :   23 MJ 6834
------------------------------------- x
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

      GREG T. GHIOZZI, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service (the "USPIS"), and charges as follows:

## COUNT ONE
## (Wire Fraud)

      1.     From in or about April 2020 through in or about December 2021, in the Southern District of New York and elsewhere, JOEL REICH, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, JOEL REICH made false statements on applications for Small Business Administration ("SBA") loans, including loans pursuant to the Paycheck Protection Program (the "PPP") and the 7(a) Program, and submitted false and fraudulent documents to banks and other lending institutions in order to obtain millions of dollars in SBA guaranteed loans and caused loan proceeds to be wire transferred in interstate commerce.

      (Title 18, United States Code, Section 1343.)

      The bases for my knowledge and for the foregoing charge are, in part, as follows:

      2.     I am an Inspector with the USPIS. I have been a Postal Inspector for approximately nineteen years. During the course of my career, I have participated in hundreds of fraud investigations and in the arrests of numerous individuals charged with perpetrating mail and wire fraud, among other things. I have been personally involved in the investigation of this matter. I base this affidavit on my training and experience, my personal knowledge as well as my conversations with other law enforcement officers, other individuals, and my examination of various reports and records.

      3.     The U.S. Attorney's Office ("USAO"), USPIS, the SBA Office of Inspector General, the Federal Deposit Insurance corporation Office of Inspector General, and the Federal Reserve Bank Office of Inspector General have been investigating JOEL REICH, the defendant, and others known and

unknown, for fraud in connection with the PPP and other SBA administered loan programs. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Background on SBA Lending

4. Based on discussions with a Special Agent of the SBA Office of Inspector General and review of public information and guidance, I have learned the following regarding SBA lending:

   a. The SBA is a federal agency that administers assistance to American small businesses, including guaranteeing loans that are issued by certain lenders to qualifying small businesses. Under the SBA loan guarantee programs, a loan is issued by a commercial lender, but the lender receives the full faith and credit backing of the United States Federal Government on a percentage of the loan. Therefore, if a borrower defaults on an SBA guaranteed loan, the commercial lender may seek reimbursement from the SBA, up to the percentage of the guarantee. By reducing the risk to commercial lenders, the SBA loan guarantee programs enable lenders to provide loans to qualifying small businesses when financing is otherwise unavailable to them on reasonable terms through normal lending channels. When a borrower seeks an SBA guaranteed loan, the borrower must meet both the commercial lender's eligibility requirements for the loan and the SBA's eligibility requirements.

   b. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through the PPP. On April 24, 2020, the PPP and Health Care Enhancement Act was signed into law, authorizing over $300 billion in additional PPP funding. Loans under this program will be referred to as "First Draw PPP" loans. On December 27, 2020, the Consolidated Appropriations Act (2021) was signed into law. It contained a new comprehensive COVID-19 relief bill, extended the PPP, and included an additional $284.5 billion in funding for first and second rounds of more easily forgivable PPP loans, and it allowed businesses that previously obtained PPP loans to obtain a second forgivable loan. Loans under this second program will be referred to as "Second Draw PPP" loans.

   c. The PPP allowed qualifying small businesses and other organizations to receive unsecured SBA-guaranteed loans with an interest rate of 1%. PPP loan proceeds had to be used by businesses on payroll costs, mortgage interest, rent, and/or utilities. The PPP allowed the interest and principal to be forgiven if businesses spent the proceeds on these payroll costs and other eligible expenses within a specified period. The amount of PPP funds a business was eligible to receive was determined by the number of its employees and its average payroll costs. Businesses applying for a PPP loan had to provide documentation, including payroll, bank and/or tax records, to confirm that they had in the past paid employees the compensation represented in

2

the loan application. Eligible businesses had to have been in operation on or before February 15, 2020, and had paid either employees or independent contractors. Businesses had to have been overseen by the SBA, but individual PPP loans were issued by approved commercial lenders who received and processed applications and supporting documentation, and then made loans using the lenders' own funds.

    d. Both the First Draw and Second Draw PPP borrower applications required applicants to answer the following question with a "Yes" or "No" response and place their initials by the response: "Is the applicant or any owner of the applicant an owner of any other business, or have common management with, any other business?"

    e. Both the First Draw and Second Draw PPP borrower applications required applicants to place their initials next to certifications indicating (1) the applicant had not and would not receive another loan under the Paycheck Protection Program; (2) all the information provided in the application and supporting materials and forms was true and accurate in all respects; and (3) the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA was a violation of federal criminal laws.

    f. The 7(a) Loan Program is the SBA's most common loan program and provides financial help for small businesses with special requirements. The maximum loan amount is $5 million. To be eligible, among other things, businesses must: operate for profit; be considered a small business as defined by SBA; be engaged in, or propose to do business in, the United States or its possessions; be able to demonstrate a need for a loan; use the funds for a sound business purpose; and not be delinquent on any existing debt obligations to the United States government.

    g. Permissible uses for the 7(a) loan include: long and short-term working capital; the purchase of equipment, machinery, furniture, fixtures, supplies or materials; the purchase of real estate, including land and buildings; the construction of a new building or renovation of an existing building; establishing a new business or assisting in the acquisition, operation, or expansion of an existing business; refinancing existing business debt, under certain conditions.

    h. Applications for 7(a) loans contain a "Use of Proceeds" section that identifies permitted uses of the loan proceeds and requires borrowers to identify what amount of the 7(a) loan proceeds will be allocated to these authorized uses. Permitted uses of the loan proceeds include, among other things, machinery and equipment purchase, inventory purchase, working capital, and to pay notes payable.

    i. An SBA Form 1050 Settlement Sheet ("SBA Form 1050") also must be completed and made a part of the loan file. One purpose of this form is to document and verify that loan proceeds have been disbursed in accordance with the loan authorization. The SBA Form 1050 is completed by the lender and signed by the lender and the borrower at the time of the initial loan disbursement. The lender is required to retain a copy of the signed form in its loan file. For all disbursements, the lender must also retain documentation that is acceptable to

SBA (*e.g.*, cancelled checks, paid receipts or invoices, wire transfer account records) and evidences compliance with the "Use of Proceeds" section of the loan authorization.

### The Fraud

5. Based on my participation in this investigation, my review of New York State Department of State ("NYSDOS") records, bank records, and publicly available information, I have learned that JOEL REICH, the defendant, owns a network of business entities solely or jointly with his wife, including, among others: Sub Enterprises, Inc. ("Sub Enterprises"); Hallmark Enterprises, LLC ("Hallmark Enterprises"); Concrete Water Remediation Inc. ("Concrete Water Remediation"); Drip Drop Waterproofing Inc. ("Drip Drop Waterproofing") and Primary Holdings (together, the "Reich Entities"). The Reich Entities, which are based in Chester, New York, transact business in one another's names, share the same business and/or mailing addresses, share bank accounts, and employ many of the same people. REICH is a sole signer on some bank accounts in the names of Reich Entities and a joint signer, with his wife, on other Reich Entity bank accounts.

6. Based on my review of records obtained from the SBA, banks, lenders, and an internet service provider, I learned that between in or about April 2020 and in or about October 2021, approximately ten loan applications with supporting documentation were submitted pursuant to the PPP and 7(a) Program on behalf of various Reich Entities, seeking millions of dollars in loan money. They contained false and fraudulent information. As a result of these applications, banks and lenders extended five SBA administered loans amounting to more than $6 million in loan proceeds to Reich Entities, which were distributed to bank accounts controlled by JOEL REICH, the defendant.

7. On or about December 8, 2022, federal agents executed search warrants at the business address of the Reich Entities and the home of JOEL REICH, the defendant, and seized computers and cellphones, among other things. At the same time, another federal agent and I interviewed JOEL REICH, the defendant, during which REICH admitted that Reich Entities were "all the same" and he was the owner. In particular, he identified Hallmark Enterprises, Sub Enterprises, Concrete Water Remediation, Primary Holdings and others, as his companies. REICH further admitted that he applied for two different PPP loans in each round on behalf of Sub Enterprises and Hallmark Enterprises.

8. Based on my review of records obtained from banks, lenders, internet service providers, NYSDOS and SBA; my review of evidence seized from computers and telephones obtained pursuant to search warrants and reports written in connection with this investigation; conversations with other agents on this investigation; and statements of JOEL REICH, the defendant, I learned the following:

### The $159,996.76 First Draw PPP Loan

9. After two failed attempts to obtain a PPP loan, on or about April 26, 2020, JOEL REICH, the defendant, applied for a First Draw $159,996.76 PPP loan on behalf of Sub Enterprises dba Drip Drop Waterproofing ("Application-1") to a bank ("Bank-1"). Application-1

was electronically signed in REICH's name; he was identified as the 100% owner of Sub Enterprises dba Drip Drop Waterproofing; and his email address, Joel@dripdropwaterproofing.com, was provided. Question 3 of Application-1 asks: "Is the applicant or any owner of the applicant an owner of any other business, or have common management with, any other business?" REICH responded "No" and certified the truth of that response by electronically placing his initials, "JR," next to it.

10. On or about May 13, 2020, Bank-1 extended a PPP loan to Sub Enterprises dba Drip Drop Waterproofing in the amount of $159,997 and transferred the loan proceeds to a bank account in the name of Hallmark Enterprises LLC Drip Drop Waterproofing Sub Enterprises. The bulk of the $159,997 PPP loan was disbursed as follows: $22,000 was withdrawn in cash; $20,000 was transferred to another Reich Entity bank account, of which all but $1,900 appears to have been spent on personal items; and $53,410.82 was transferred to another Reich Entity bank account where some of it was transferred to other REICH controlled bank accounts and appears to have been spent on personal items. The $159,996.76 PPP loan is in default.

### The $600,360 First Draw PPP Loan

11. After two failed attempts to obtain a second First Draw PPP loan, and even though Sub Enterprises dba Drip Drop Waterproofing already received the above PPP loan in or about May 2020, on or about June 19, 2020, JOEL REICH, the defendant, applied for a First Draw $600,360 PPP loan on behalf of Hallmark Enterprises, LLC dba Drip Drop Waterproofing ("Application-2") to a lender ("Lender-1"). Application-2 was electronically signed in REICH's name; he was identified as the 100% owner of the company and primary contact; and his email address, Joel@hallmarkenterprise.com, was provided and used to communicate with bank representatives.

12. In support of Application-2, JOEL REICH, the defendant, submitted false and fraudulent documents. He submitted what purported to be a bank account statement for the 4040 Account in the name of Hallmark Enterprises LLC Drip Drop Waterproofing that contained a transaction listed as a $159,997 deposit on May 13, 2020, from "WB Bridge Hotel." According to the actual bank records for the 4040 Account, the true title on the account was Hallmark Enterprises LLC Drip Drop Waterproofing Sub Enterprises, not Hallmark Enterprises LLC Drip Drop Waterproofing. Further, the $159,997 transfer into the 4040 Account on May 13, 2020, was the proceeds of the Bank-1 PPP loan extended to Sub Enterprises dba Drip Drop Waterproofing, not a transfer from "WB Bridge Hotel."

13. Question 3 of Application-2 asks: "Is the applicant or any owner of the applicant an owner of any other business, or have common management with, any other business" and JOEL REICH, the defendant, responded "No" and certified the truth of that response by electronically placing his initials, "JR," next to it.

14. JOEL REICH, the defendant, also certified, with his electronic signature, that between February 15, 2020, and December 31, 2020, the "Applicant has not and will not receive another loan under the Paycheck Protection Program."

15.     On or about July 6, 2020, as a result of Application-2, Lender-1 extended a loan in the amount of $600,360 to Hallmark Enterprises dba Drip Drop Waterproofing and wire transferred the loan proceeds from Lender-1's bank account in Denver, Colorado, to an account in the name of Hallmark Enterprises dba Sub Enterprises Drip Drop Waterproofing at a bank in Montebello, New York. From there, the loan proceeds were transferred to various individuals, bank accounts in the names of REICH's wife and Reich Entities. They were also used to pay for credit card and other bills.

16.     On or about August 31, 2020, a representative of Lender-1 sent JOEL REICH, the defendant, an email advising him that the SBA had informed Lender-1 that two PPP loans and/or approvals had been received by REICH's business and if that were the case, one would have to be returned. REICH responded by email: "We only received one ppp!" That loan was forgiven.

### The $471,292 Second Draw PPP Loan

17.     On or about January 29, 2021, JOEL REICH, the defendant, applied for a Second Draw $623,500 PPP loan ("Application-3") to another bank ("Bank-2") on behalf of Hallmark Enterprises. Application-3 was electronically signed REICH's name, identified REICH as the 100% owner of Hallmark Enterprises and its primary contact, and provided the email address Joel@hallmarkenterprises.com. In addition, the IP address that was used when the application was electronically signed on or about January 29, 2021, was associated with REICH's residence (the "IP Address").

18.     Question 3 of Application-3 asks: "Is the applicant or any owner of the applicant an owner of any other business, or have common management with, any other business" and JOEL REICH, the defendant, responded "No" and certified the truth of that response by electronically placing his initials, "JR," next to it.

19.     In support of Application-3, JOEL REICH, the defendant, submitted purported IRS Forms 941 in the name of Hallmark Enterprises for the tax year 2019, and represented they were filed with the IRS. According to information provided by the IRS, however, the IRS has no record of Forms 941 being filed on behalf of Hallmark Enterprises for 2019.

20.     As a result of Application-3, on or about March 14, 2021, Bank-2 extended a Second Draw $471,292 PPP loan to Hallmark Enterprises and wire transferred $471,292 to a Hallmark Enterprise bank account where much of it was transferred to other Hallmark Enterprises bank accounts and $20,000 was transferred to REICH's wife's checking account.

### The $158,167 Second Draw PPP Loan

21.     After two failed attempts to obtain another Second Draw PPP loan, and even though Hallmark Enterprises already received the above Second Draw PPP loan, on or about March 27, 2021, JOEL REICH, the defendant, applied for a Second Draw $158,167 PPP loan ("Application-4") to Bank-1 on behalf of Sub Enterprises Inc. dba Drip Drop Waterproofing. REICH was identified as the 100% owner and primary contact of the company. The email address, Joel@dripdropwaterproofing.com, was used to submit supporting documents and to communicate with representatives of the bank.

22.  Question 3 of Application-4 asks: "Is the applicant or any owner of the applicant an owner of any other business, or have common management with, any other business. Even though JOEL REICH, the defendant, owned other businesses, he responded "No" and certified the truth of that response by electronically placing his initials, "JR," next to it.

23.  JOEL REICH, the defendant, also certified that "The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan." As described above, at the time Application-4 was submitted for Sub Enterprises LLC, dba Drip Drop Waterproofing, JOEL REICH, the defendant, already had received the $471,292 Second Draw PPP loan on behalf of Hallmark Enterprises.

24.  On or about April 2, 2021, Bank-3 extended a Second Draw PPP loan to Sub Enterprises dba Drip Drop Waterproofing and wire transferred $158,167 to a Hallmark Enterprises dba Sub Enterprises Drip Drop Waterproofing bank account, where some of the loan proceeds appear to have been used for payroll and some transferred to other Reich Entity accounts.

### The $5 Million 7(a) Program Loan

25.  On or about October 28, 2021, JOEL REICH, the defendant, submitted an application for a 7(a) Program loan in the amount of $5 million ("Application-5") to a lender ("Lender-2") on behalf of Hallmark Enterprises. Application-5 was electronically signed in the names of REICH and his wife, and the IP Address was used to communicate with Lender-2. As a result of Application-5, Lender-2 extended a $5 million loan to Hallmark Enterprises.

26.  As noted above, applicants for 7(a) Program loans must identify permitted uses for the loan proceeds and a list of creditors and amounts due to them. The borrower provides this information on the loan application and by completing an SBA Form 1050 signed by the borrower and lender. When the loan proceeds are disbursed, they are transferred directly to creditors for the payment of invoices for items that qualify as authorized uses of the loan proceeds.

27.  On or about December 23, 2021, JOEL REICH, the defendant, electronically signed an SBA Form 1050 that indicated $1,098,360 of the loan proceeds were to be disbursed to a company ("Company-1") to pay for purchasing "Machinery & Equipment." In addition, REICH submitted a purported invoice from Company-1 that identified six pieces of one type of equipment and fourteen of another and indicated a balance due of $1,098,360 (the "Company-1 Invoice"). As described below, the representation that $1,098,360 was going to be used to purchase machinery and equipment from Company-1 was false and Company-1 Invoice was false and fraudulent.

28.  Two days before REICH electronically signed the SBA Form 1050, Company-1 was added to the account title of a bank account in the name of another Reich Entity, Barrier Associates (the "9239 Account"). On the same day REICH electronically signed the SBA Form 1050, Company-1 was added as an assumed name for Barrier Associates. During his interview with agents, REICH admitted that he added Company-1 to the account title.

29. $1,098,360 of loan proceeds were disbursed to the 9239 Account and they were not used to purchase Machinery & Equipment from Company-1, as represented in the loan application and SBA Form 1050. Instead, JOEL REICH, the defendant, withdrew $65,000 at a check cashing establishment and almost all the rest was transferred, in pieces, to Reich Entity accounts and $75,000 was transferred to REICH'S wife's checking account.

30. During his interview with agents, JOEL REICH, the defendant, admitted that he directed someone in his office to create the Company-1 Invoice but it did not matter who because "I own it."

31. Meanwhile, law enforcement has recovered one text and four voice texts, all dated November 22, 2021, from the cellphone of JOEL REICH, the defendant. Based on my review of a report of data extracted from REICH's cellphone, I believe the text and voice texts are between JOEL REICH, the defendant, and the owner of Company-1 ("Owner-1"). Attached to the text, which was sent from REICH to Owner-1, is the Company-1 Invoice, which REICH appears to have put together using his cellphone while accessing an invoice creation website. Based on my review of the voice texts and the evidence obtained during the investigation, I believe the voice texts show REICH attempting to coach Owner-1 on how to respond to inquiries regarding the information contained in the Company-1 invoice. Specifically, I understand the following was said in the voice texts:

    a. At or about 4:56 PM, REICH left a voice text for Owner-1 in which he stated: "[Owner-1], I'm creating this for the bank in case someone calls you about you know, building this equipment or selling this equipment. So you say yes, you know? The company selling is Hallmark, is my company and, ah [Company-1's] a leasing company."

    b. At or about 5:07 PM, Owner-1 left REICH the voice text: "Ah, Joel, a little bit not stand. Ah, somebody just needed call me and I need needed prove it, I need proof I'm selling to you six machineries heater and fourteen machineries without heater, from one million and ah change of my [Company-1.] I'm not coming to jail. Um right thank you."

    c. At or about 5:10 PM, Owner-1 left REICH another voice text: "Um, right [U/I] somebody call me of a bank and, ah, I needed to say, yes, I'm selling to you, ah, machine from, ah, one million dollars. Ah, um I'm little bit confused. Just explain me one more time."

          d.      At or about 6:27 PM, REICH left Owner-1 the voice text: "Don't worry. All good."

          WHEREFORE, I respectfully request that a warrant be issued for the arrest of JOEL REICH, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
GREG T. GHIOZZI
Postal Inspector
United States Postal Inspection Service

Sworn to before me this
17th day of October 2023

_____
THE HONORABLE VICTORIA REZNIK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9